IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL TODD JOHNSTON, | ) |
| Plaintiff. | ) Civil Action No. 7:21cv00100 |
| v. | ) **MEMORANDUM OPINION** |
| SPEEDWAY, LLC, | ) By:   Hon. Thomas T. Cullen |
| Defendant. | )        United States District Judge |

Plaintiff Michael Johnston worked as an assistant manager at a convenience store owned by Defendant Speedway, LLC, for approximately eight years.[1] He fell on hard times in 2020, becoming homeless in September and filing for Chapter 13 bankruptcy in October. Because he was living out of his car, Johnston asked his manager for permission to use the convenience store's mailing address as his personal mailing address. The store manager and a district manager apparently approved that request, and sometime after that, a piece of mail related to Johnston's bankruptcy proceeding arrived at the store. Another store employee opened this letter—without Johnston's knowledge or permission—and then gave it to Johnston's manager. The manager then notified "corporate" about Johnston's pending bankruptcy. Unnamed corporate officials, in turn, decided that Johnston's bankruptcy made him a liability—as Johnston's manager explained it to him, because they worried that he might steal money from the cash register. As a result, Defendant terminated his employment on November 13, 2021.

---

[1] When Johnston began working at the store in 2012, it was owned by Wilco. In 2014, Speedway acquired ownership of the store.

Johnston filed suit alleging wrongful termination in violation of a provision in the federal bankruptcy code that makes it unlawful for an employer to terminate an employee "solely because" he has filed for bankruptcy. Johnston also alleges separate claims for breach of contract and intentional infliction of emotional distress. Speedway has moved to dismiss the action in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion has been fully briefed and argued, and it is ripe for decision. For the reasons explained below, the court finds that Johnston has plausibly alleged wrongful termination in violation of bankruptcy law and therefore will deny Speedway's motion to dismiss that claim.[2] The court, however, will grant Speedway's motion to dismiss Johnston's breach of contract and intentional infliction of emotional distress claims.

## BACKGROUND

The court construes the following allegations from Johnston's complaint as true for purposes of deciding the motion to dismiss. *See, e.g.*, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

Johnston resides in the greater New River Valley and first began working for Wilco in May 2012 as an Assistant Manager at one of its Blacksburg, Virginia stores. Compl. ¶¶ 6, 13. The store changed ownership from Wilco to Speedway in October 2014. *Id.* ¶ 13. In September 2020, however, Johnston became homeless. *Id.* ¶ 14. Because he needed a physical

---

[2] And the court will deny Speedway's motion to dismiss Johnston's claims for emotional-distress damages, punitive damages, and attorneys' fees related to his wrongful-termination claim. As explained below, a Rule 12(b)(6) motion is not the appropriate mechanism to challenge specific remedies sought by a plaintiff.

address to receive mail from his bank, Johnston sought and received permission from both his manager, Chris Daughnault, and district manager, John Hughes, to use the Blacksburg Speedway store as his personal mailing address. *Id.* Johnston maintains that neither supervisor notified him that he would waive any privacy expectation in his personal mail delivered to the store. *Id.* ¶ 15.

On October 7, 2020, Johnston filed for Chapter 13 bankruptcy, listing the Blacksburg Speedway address as his personal mailing address on the petition. *Id.* ¶ 17. Johnston continued working at Speedway until November 13, 2020, when Daughnault notified him that Speedway had terminated his employment due to the bankruptcy filing. *Id.* ¶ 24. Daughnault told Johnston that an employee at the Blacksburg Speedway opened Johnston's mail, learned he had filed for bankruptcy, and gave the mail to Daughnault. *Id.* ¶ 25. Daughnault then "notif[ied] corporate," who opined that Johnston "was too much of a 'liability' given his bankruptcy filing" and accordingly instructed Daughnault to terminate Johnston's employment. *Id.* Specifically, Johnston alleges that Daughnault told him that Speedway's corporate representatives feared that he would steal money from the store. *Id.* ¶ 26. Johnston nevertheless received permission to work his final scheduled shift. When that shift ended, he locked the store and turned in his keys. *Id.* ¶ 28.

Johnston has filed suit alleging that Speedway wrongfully terminated him and, in doing so, violated federal bankruptcy law, committed breach of contract, and "tortuously and intentionally inflicted emotional distress" upon him. *Id.* ¶¶ 41–59. He seeks reinstatement of his employment at Speedway, compensatory, emotional distress, and punitive damages, and attorneys' fees. *Id.* ¶ 60.

## PROCEDURAL HISTORY

This matter has an unusual procedural history. Johnston originally filed his action as an adversary proceeding against Speedway in the United States Bankruptcy Court for the Western District of Virginia. On January 27, 2021, Speedway filed a motion to withdraw the reference of the adversary proceeding pursuant to 28 U.S.C. § 157(d), Federal Rule of Civil Procedure 38, Federal Rule of Bankruptcy Procedure 5011, and Local Rule 9015-1 of the United States Bankruptcy Court for the Western District of Virginia. Speedway also filed its motion to dismiss that day. On February 19, 2021, the Honorable Glen E. Conrad, Senior United States District Judge, granted the motion to withdraw the reference. Judge Conard then transferred the new civil case to this court on April 16, 2021. The court held a hearing on the motion to dismiss on April 23, 2021.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ANALYSIS

### A. Violation of 11 U.S.C. § 525(b)

#### i. Private Right of Action

Count One alleges violation of 11 U.S.C. § 525(b), which prohibits a private employer from terminating an individual's employment "solely because" that individual has filed for bankruptcy. In moving to dismiss, Speedway argues that § 525(b) does not authorize a private right of action, and that Count One accordingly fails to state a claim. Johnston, on the other hand, points to 11 U.S.C. § 105, which authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Federal Bankruptcy Code]," as a basis for the court to award him relief for Speedway's alleged § 525(b) violation.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Indeed, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 668 (1979)). The court must therefore "interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286.

Absent such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.*

In determining congressional intent, a "critical" factor for the court to consider is whether the statute includes "rights-creating language." *Id.* at 288. Such language "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff" and "has generally been the most accurate indicator of the propriety of implication of a cause of action." *Cannon*, 441 U.S. at 690 n.13. Moreover, "[i]f the statutory structure provides a discernible enforcement mechanism, a court may not imply a private right of action because 'the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Qwest Commc'ns. Corp. v. Maryland-Nat'l Cap. Park & Planning Comm'n*, No. RWT 07cv2199, 2010 WL 1980153, at *5 (D. Md. May 13, 2010) (quoting *Sandoval*, 532 U.S. at 290) (alteration omitted).

Here, the court first notes that § 525(b) protects federal bankruptcy filers from discriminatory employment termination and therefore "explicitly confer[s] a right directly on a class of persons that includes the plaintiff," who alleges wrongful termination on account of his Chapter 13 bankruptcy petition. *Cannon*, 441 U.S. at 690 n.13. Additionally, § 525(b) provides for no express enforcement mechanism, leaving no suggestion that Congress intended to preclude a private remedy for the statute's violation. The court accordingly concludes that Congress intended § 525(b) to provide for a private right of action and private remedy that the court can award under its § 105 authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Federal Bankruptcy Code]."

Several courts have already concluded as much. In *In re Dwelle*, for example, which Speedway itself points to as authority for the proposition that § 525(b) does not allow for a private right of action, the United States Bankruptcy Court for the Western District of Arkansas ultimately found "that compensatory damages for back wages are warranted under § 105(a) for the unlawful termination of [the plaintiff] in contravention of § 525." AP No. 6:13-ap-7081, 2015 WL 13776210, at *6 (Bankr. W.D. Ark. Apr. 20, 2015). Moreover, in *Vaughan-Williams v. First Commerce Bank*, which Speedway also cites, although the United States District Court for the District of New Jersey dismissed the plaintiff's claims for emotional distress damages, punitive damages, and attorneys' fees under § 525(b), the court nonetheless acknowledged that "courts have awarded equitable relief when a violation of § 525 was found, including back pay, reinstatement, or injunctive relief." 470 F. Supp. 3d 427, 431 (D.N.J. 2020) (collecting cases). One of those courts opined that "awarding lost profits resulting from the discriminatory action is an appropriate remedy" because "[s]uch an award shows employers that discriminatory action with respect to employment will not be tolerated, and it places the aggrieved debtor in the position he would be in had the discrimination not occurred." *Id.* at 432 (quoting *In re McNeely*, 82 B.R. 628 634 (Bankr. S.D. Ga. 1987)).

Ultimately, "the purpose of § 525(b) is to effectuate the 'fresh start' policy, which is behind personal bankruptcies." *Id.* With this purpose in mind, along with the statutory text and the precedent discussed above, the court concludes that § 525(b) allows for a private right of action and private remedy, and dismissal on this basis is not warranted.

### ii.     Emotional Distress Damages, Punitive Damages, & Attorneys' Fees

Speedway next argues that even if § 525(b) does allow for a private right of action, it does not permit an award of emotional distress damages, punitive damages, or attorneys' fees. This court has previously concluded that a Rule 12(b)(6) motion is not the proper mechanism to challenge (or dismiss) a plaintiff's request for a particular remedy. *See, e.g.*, *Flores v. Va. Dep't of Corr.*, No. 5:20-cv-00087, 2021 WL 668802, at *7 (W.D. Va. Feb. 22, 2021) ("This court declines to rule on whether a particular remedy is appropriate on a motion to dismiss."); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629, 631–32 (W.D. Va. 2014) ("A plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety . . . . As such, the nature of the relief included in the demand for judgment is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted."). The court will therefore deny Speedway's motion as to Johnston's requests for emotional distress damages, punitive damages, and attorney's fees.[3]

### B. Breach of Contract Claims

Counts Two and Three of Johnston's complaint allege breach of contract. Specifically, Counts Two and Three respectively contend that Speedway breached its "Code of Business Conduct" by (1) "illegally terminating [Johnston's] employment with Speedway and thereby acting unfairly and unethically" and (2) opening Johnston's personal mail and thereby violating his privacy rights. Compl. ¶¶ 47–55, Ex. A.

---

[3] The court, however, notes that Defendant makes several good arguments as to why these types of damages (and fees) are not recoverable under a § 525(b) claim. Those arguments will be pertinent—and may be dispositive—at a later stage.

To state a claim for breach of contract in Virginia, a plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004). Speedway contends that Counts Two and Three both fail to state a claim because the Speedway Code of Business Conduct does not constitute a legally enforceable obligation. Defendant is correct on this point.

"Virginia strongly adheres to the employment-at-will doctrine, that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will . . . ." *VanBuren v. Grubb*, 783 S.E.2d 919, 921 (Va. 2012) (internal quotation marks and citations omitted). Here, Johnston argues that whether or not his employment with Speedway was at will is irrelevant because the Speedway Code of Business Conduct itself constitutes a legally enforceable obligation. He contends that Speedway required its employees to sign and abide by its Code of Business Conduct, which, in return, obligated Speedway to provide a safe and fair work environment and protect them from discrimination, harassment, and violence. Johnston asserts that the Speedway Code of Business Conduct therefore created a contractual relationship governing how an employee "would be treated and expected to treat others as, and while, an employee." Pl.'s Mem. Opp'n Mot. Dismiss at 9.

In support of his arguments, Johnston points to *Thompson v. American Motor Inns, Inc.*, in which this court found a corporation's code of conduct constituted an enforceable agreement. 623 F. Supp. 409, 411 (W.D. Va. 1985). In that case, however, the code of conduct at issue stipulated that employees who either did not meet performance standards, violated

9

company policy, or broke company rules would receive warning notices, three of which would result in dismissal. *Id.* Because the corporation "made specific promises to its employees not to dismiss without three warnings or just cause," the court concluded that its employment agreement was not at will. *Id.* at 416. The court accordingly found that the corporation breached its employment contract when it terminated the plaintiff's employment without first giving him a warning notice. *Id.* at 417–18.

The facts of this case are materially different than the ones at issue in *Thompson*. Johnston points only to general provisions in the Speedway Code of Conduct that note a responsibility to engage in "ethical and legal behavior," caution against "unethical or illegal conduct," and express the need to protect confidential "[p]ersonal employee information . . . including Personal Identifiable Information, like social security numbers and bank account numbers . . . ." Compl. Ex. A at 9, 15. Such provisions are simply not the type of binding promises that the code of conduct established in *Thompson,* and they do not impose a legally enforceable obligation on Speedway related to the terms of Johnston's employment. *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d. Cir. 2016) (concluding that anti-discrimination language in company employee handbook did not constitute an enforceable contract); *Jackson v. Liberty Univ*, No. 6:17-CV-00041, 2017 WL 3326972, at *7 (W.D. Va. Aug. 3, 2017) (dismissing breach of contract claim after finding college code of conduct did not constitute an enforceable contract under Virginia law). The court will therefore dismiss Counts Two and Three without prejudice.[4]

---

[4] To the extent Johnston argues that the court should instead construe Count Three as a tort claim for invasion of privacy, dismissal is still warranted, as "Virginia courts do not recognize a common law cause of action for invasion of privacy." *Hayes v. KIK Custom Prods.*, No. 7:11-cv-00200, 2011 WL 4963774, at *1

### C. Intentional Infliction of Emotional Distress

Lastly, Speedway asserts that Count Four fails to adequately state a claim for intentional infliction of emotional distress. Claims for intentional infliction of emotional distress are disfavored in Virginia "because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008). A plaintiff must prove four elements by clear and convincing evidence: (1) that "the wrongdoer's conduct was intentional or reckless"; (2) that "the conduct was outrageous or intolerable"; (3) that "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) that "the resulting emotional distress was severe." *Id.*

To show "intentional or reckless" conduct, the plaintiff must plead that the defendant "had the specific purpose of inflicting emotional distress" or "intended his specific conduct and knew or should have known that emotional distress would likely result." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). Moreover, in alleging "outrageous or intolerable" conduct, it is insufficient for a complaint to describe conduct that is merely "insensitive and demeaning." *Eldib v. Bass Pro Outdoor World, LLC*, 654 F. App'x 620, 621 (4th Cir. 2016) (quoting *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006)). The alleged conduct must instead be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 624 S.E.2d at 33. Finally, the complaint must show both causation and that the distress

---

(W.D. Va. Oct. 14, 2011).

inflicted was "so severe that no reasonable person could be expected to endure it." *Russo v. White*, 400 S.E.2d 160, 162–63 (Va. 1991).

Here, Johnston only alleges that Speedway intentionally terminated his employment after wrongfully learning about his Chapter 13 bankruptcy filing, and that he has "suffered severe emotional distress and humiliation" as a result. Compl. ¶ 58. He contends that in doing so, Speedway relied on "illegally and wrongfully obtained information." *Id.* But his complaint is devoid of any allegation that Speedway acted with the "specific purpose of inflicting emotional distress" on him, or that it "knew or should have known that emotional distress would likely result" from terminating him. *Womack*, 210 S.E.2d at 148. And while Johnston contends that Speedway terminated his employment based on "illegally and wrongfully obtained information," "[i]t is not enough that the defendant acted with tortious or even criminal intent." *Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005) (quoting *Russo*, 400 S.E.2d at 162).

Johnston's claim also fails to sufficiently allege that Speedway's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 624 S.E.2d at 33. Courts in this district have dismissed intentional infliction of emotional distress claims in a variety of scenarios in the employment context, including a public and "humiliating" termination in front of an employee's longtime customers, allegations of "gender discrimination and sexual harassment," and complaints of "verbal racial harassment and discrimination," to name a few. *Burnopp v. Carter Bank & Trust*, No. 4:20CV00052, 2020 WL 6875037, at *1–*3 (W.D. Va. Nov. 23, 2020) (collecting cases). While

12

the troubling circumstances of his termination understandably caused angst and embarrassment, Johnston has not adequately alleged "outrageous" conduct sufficient to give rise to a claim for intentional infliction of emotional distress. The court will accordingly dismiss Count Four without prejudice.

## Conclusion

For the reasons discussed above, Speedway's motion will be **GRANTED IN PART** and **DENIED IN PART**. The court will grant the motion to dismiss as to Counts Two through Four but deny the motion as to Count One.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 28th day of April, 2021.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE